# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DIRECTV, INC.**,

      Plaintiff,

v.                                Civil No. **03-0608 MCA/ACT**

**VINCE BARCLAY**,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court pursuant to ***Plaintiff's Motion for Entry of Default and Default Judgment Against Vince Barclay*** [Doc. No. 81] filed on February 2, 2004.  The Court held a hearing on Plaintiff's motion on August 18, 2004.  Having reviewed the relevant law, the pleadings and exhibits of record, the arguments and evidence presented at the hearing, and being fully advised in the premises, I find that Plaintiff is entitled to a default judgment granting injunctive relief and awarding statutory damages against Defendant Barclay in the amount of $10,000.00, with costs and disbursements in the amount of $17.00, and attorney fees in the amount of $711.32.  Plaintiff's motion is granted in part and denied in part for the reasons set forth below, and a default judgment closing this case shall be entered forthwith.

## I.    <u>FINDINGS OF FACT</u>

The well-pleaded factual allegations in Plaintiff DIRECTV's *Complaint* are accepted as true by virtue of Defendant Barclay's default.  In addition, the Court makes the following

findings of fact with respect to the issues of damages, injunctive relief, attorney fees, and costs:

1.      Defendant Barclay was properly served in this action on June 25, 2003, when Plaintiffs' process server left the *Summons* and the *Complaint* with Defendant Barclay's mother, Rita Stevens, at his residence in Southwest Albuquerque.  [Ex. A to Doc. No. 81.]

2.      Defendant Barclay has failed to answer the *Complaint* or appear in this action at any time, and this Defendant is in default.

3.      Defendant Barclay purchased a package containing a DIRECTV receiver, satellite dish, and access card from an electronics store in Fort Worth, Texas, on or about August 28, 2000.  [Ex. 9.]

4.      Defendant Barclay purchased a second package containing a DIRECTV receiver, satellite dish, and access card from an electronics store in Albuquerque, New Mexico, on or about November 9, 2000.  [Ex. 9.]

5.      Despite purchasing this equipment, Defendant Barclay did not purchase a subscription or enter into any contract in order to lawfully receive and view any of the programming available through DIRECTV's satellite transmissions.

6.      A south-facing DIRECTV satellite dish has been observed on Defendant Barclay's residence as recently as August 17, 2004.  [Ex. 10.]

7.      Defendant Barclay purchased four (4) "Terminator" bootloaders from "DSS-Stuff" on or about April 9, 2001.  [Ex. 8.]

8.     Defendant Barclay purchased an additional five (5) "Terminator" bootloaders from "DSS-Stuff" on or about April 24, 2001.

9.     During the time period relevant to Plaintiff's *Complaint*, "DSS-Stuff" operated an Internet website offering pirate access devices, as well as related technical support, for sale to the general public.  [Ex. 5.]

10.     The bootloaders purchased by Defendant Barclay are designed for use in intercepting or receiving Plaintiff DIRECTV's satellite transmissions without authorization and have no generally recognized legitimate use.

11.     The bootloaders purchased by Defendant Barclay are installed and rendered operational simply by plugging each bootloader into a DIRECTV receiver and then plugging a DIRECTV "Period 2" access card into each bootloader.

12.     Other than the tasks described above, no assembly or modification of any device equipment is required to render these bootloaders operational for the purpose of intercepting or receiving all of the television programming available through Plaintiff DIRECTV's satellite transmissions.

13.     With access to all of the television programming available through Plaintiff DIRECTV's satellite transmissions, it is reasonable to infer that Defendant Barclay's viewing habits resembled those of the top ten percent (10%) of DIRECTV subscribers, *i.e.*, those who purchased or subscribed to significantly more pay-per-view and "premium" channels than the average DIRECTV subscriber.

14.     The average monthly cost of a subscription for the top ten percent (10%) of DIRECTV subscribers is $229.00.

15.     The bootloaders purchased by Defendant Barclay were rendered useless when Plaintiff DIRECTV completed the switchover from "Period 2" access cards to "Period 3" access cards in October 2002.

16.     Based on the above findings, it is reasonable to infer that Defendant Barclay obtained approximately $229 worth of programming per month for a period of nineteen months between April 2001 and October 2002 on each of the two DIRECTV receivers that he purchased, for a total of approximately $8,702.00 in lost subscription and pay-per-view revenues to Plaintiff DIRECTV.

17.     Based on the above findings, it is reasonable to infer that Defendant Barclay resold or distributed at least one of the nine (9) bootloaders that he purchased before these devices were rendered useless in October 2002.

18.     Plaintiff DIRECTV has shown that the requirements for injunctive relief are satisfied with respect to Defendant Barclay in this case.

19.     In conjunction with the injunctive relief granted in this case, the award of statutory damages, attorney fees, and costs is sufficient to deter future violations by Defendant Barclay.

20.     At the hearing on August 18, 2004, Plaintiffs' counsel supplied additional information regarding the itemization of the costs and attorney fees requested in their motion, and the amounts requested are reasonable in light of this additional information.

II.   **ANALYSIS**

   A.   **Jurisdiction**

   The law in this circuit requires that "judgment by default should not be entered without a determination that the court has jurisdiction over the defendant." Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 771 (10th Cir. 1997).   Thus, before entering a default judgment "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. and Loan, 802 F.2d 1200, 1202-03 (10th Cir. 1994).

   In this case, the Court has reviewed the record and is satisfied that it has jurisdiction over both the subject matter and the parties at issue in Plaintiff's motion. See Cablevision of S. Conn., Ltd. P'Ship v. Smith, 141 F. Supp. 2d 277, 282-83 (D. Conn. 2001).   In particular, the Court finds that Defendant Barclay was properly served with the *Summons* and *Complaint*, and that he is not an infant, an incompetent person, or a soldier or sailor who is shielded from entry of a default judgment under these circumstances.

   B.   **Damages**

   The Tenth Circuit has held that "a court may enter a default judgment without  a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985).   In such cases where a hearing is necessary, "the calculation of damages requires the Court to look beyond the averments of the complaint.  The Court is required to examine the sufficiency of all evidence with respect to damages, and, when evidence is deemed insufficient, to ascertain

the appropriate level of damages through its own inquiry."  Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132(HB) et al., 2004 WL 1488110, at *2 (S.D.N.Y. June 30, 2004) (citations omitted).  The amount of damages assessed through such an inquiry "rests in the sound discretion of the Court."  DIRECTV, Inc. v. Albright, No. Civ. A. 03-4303, 2003 WL 22956416, at *3 (E.D. Pa. Dec. 9, 2003) (citing Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990)).

While in this context "[d]ecisions to enter judgment by default are committed to the district court's sound discretion, . . . a decision based on an erroneous view of the law is an abuse of discretion."  Dennis Garberg & Assocs., Inc., 115 F.3d at 771.  Thus, it is erroneous to enter a default judgment if, as a matter of law, Plaintiff's *Complaint* fails to state a claim upon which relief may be granted.

> '[A] defendant's default does not in itself warrant the court entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered . . . .  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. . . .  In short, . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover.'

DirecTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Further, a default judgment may not award relief that is greater in kind or amount than that sought in the *Complaint*.  See Fed. R. Civ. P. 54(c); Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 683 (2d Cir. 1993).

Under the authorities cited above, any award of damages based on Defendant Barclay's default must be preceded by a determination of whether Plaintiff's pleading states a claim upon which relief may be granted. If Plaintiff surmounts this preliminary hurdle, the Court must further determine whether the law confers discretion to determine the amount of damages, and if so, what factors are relevant to the Court's exercise of such discretion.

In this case, Plaintiff claims arise under four statutory provisions, namely Section 605(a) and 605(e)(4) of the Cable Communications Policy Act (CCPA), 47 U.S.C. §§ 605(a), 605(e)(4), and Sections 2511 and 2512 of the Electronic Communications Privacy Act, also known as the Wiretap Act, 18 U.S.C. §§ 2511, 2512.[1]  Accordingly, the Court first determines whether Plaintiff states a claim and is entitled to relief under the CCPA, and then the Court turns to the Plaintiff's claims under the Wiretap Act.

### 1.  The Cable Communications Policy Act (CCPA)

Plaintiff's motion asserts that it is entitled to $10,000 in damages for Defendant Barclay's violations of the CCPA. In support of this assertion, Plaintiff cites two provision of the CCPA. First, Plaintiff's *Complaint* alleges that Defendant Barclay is in violation of Section 605(a) of the CCPA, which essentially prohibits unauthorized persons from receiving satellite transmissions of the type offered by Plaintiff, or assisting another person in doing

---

[1] Plaintiff's *Complaint* also contains a state-law claim for conversion; however, Plaintiff's motion for default judgment does not seek damages for this claim, and courts in other states have concluded that the type of activity alleged here is not legally sufficient to support a claim for conversion.  See, e.g., DIRECTV, Inc. v. Roush, No. 03 C 9047, 2004 WL 1718441, at *3 (N.D. Ill. July 29, 2004).

so.  <u>See</u> 47 U.S.C. § 605(a); <u>Huynh</u>, 318 F. Supp. 2d at 1128.  Second, Plaintiff's *Complaint* alleges that Defendant Barclay is in violation of Section 605(e)(4) of the CCPA, which essentially prohibits unauthorized persons from manufacturing, assembling, modifying, importing, exporting, selling, or distributing a device if they have reason to know that the device is primarily intended for the type of activity prohibited by Section 605(a), *i.e.*, unauthorized reception of Plaintiff's satellite transmissions.  <u>See</u> 47 U.S.C. § 605(e)(4); <u>DIRECTV, Inc. v. Getchel</u>, No. 3:03 CV 2073(GLG), 2004 WL 1202717, at *3 (D. Conn. May 26, 2004).  Devices intended for this type of activity are commonly known as "pirate access devices" or "descramblers."

Other courts have held that in order to establish a violation of Section 605(a), "a plaintiff must prove that the defendant received or assisted another in receiving an interstate communication."  <u>Huynh</u>, 318 F. Supp. 2d at 1131.  "[P]ossession of a pirate access device standing alone does not amount to a violation."  <u>Id.</u>  However, a violation of Section 605(a) may be proven by circumstantial evidence, and possession of a pirate access device may serve as circumstantial evidence that the owner or recipient of the device is receiving the type of satellite transmissions prohibited by this statutory provision.  <u>See</u> <u>DIRECTV, Inc. v. Gemmell</u>, 317 F. Supp. 2d 686, 693 (W.D. La. 2004).

In contrast, Section 605(e)(4) pertains to the pirate access devices themselves, but the requirements for proving a violation of this provision are more strict because it "targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices." <u>Albright</u>, 2003 WL 22956416, at *2; <u>accord</u> <u>Getchel</u>, 2004 WL 1202717, at *3; <u>DIRECTV,</u>

Inc. v.Hussain, No. Civ. A.03-6482, 2004 WL 1125937, at *1 (E.D. Pa. May 20, 2004); Hernandez, 2004 WL 1488110, at *3.  The Second Circuit has distinguished Section 605(a) from Section 605(e)(4) by concluding that a violation of Section 605(a) "occurs each time a device is *purchased and installed*," whereas Section 605(e)(4) is "the provision relating to manufacturers and sellers, *rather than users*, of cable descramblers."  Community Television Systems, Inc. v. Caruso, 284 F.3d 430, 435-436 & n.6 (2d Cir. 2002) (emphasis added).

The Court finds these authorities persuasive and concludes that in order to state a claim under which statutory damages can be awarded for violation of Section 605(e)(4), Plaintiff cannot rely solely on the fact or inference that a Defendant purchased or installed a single pirate access device to receive satellite television transmissions on his or her personal television system without proper authorization.  In other words, the Court concludes that the mere act of installing or operating a single pirate access device on one's personal television system may serve as circumstantial evidence of a violation of Section 605(a), but it does not fall within the definition of "manufacturing," "modifying," or "assembling" a device under Section 605(e)(4).  Similarly, the simple fact of receiving a single pirate access device through the mail may provide circumstantial evidence to support a violation of Section 605(a), but it does not amount to "distributing," "exporting," or "importing" a device under Section 605(e)(4).  See DIRECTV, Inc. v. Brasswell, No. 4:03-CV-330-A, 2004 WL 1562964, at *2 n.3 (N.D. Tex. July 12, 2004).

The procedure for calculating damages to a party aggrieved by violations of Sections 605(a) or 605(e)(4) is provided in Section 605(e)(3)(C) of the CCPA.  See 47 U.S.C. §

605(e)(3)(c).  Under this procedure, the aggrieved party may elect to receive either actual damages and any profits of the violator, or an award of statutory damages. With respect to statutory damages, Section 605(e)(3)(C)(i)(II) of the CCPA provides that:

> the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

47 U.S.C. § 605(e)(3)(C)(i)(II).  Courts have interpreted this language as granting discretion to the district court to decide what amount to award based on the particular circumstances of each case.  See, e.g., DirecTV, Inc. v. Kaas, 294 F. Supp. 2d 1044, 1047-48 (N.D. Iowa 2003) (citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 17-21 (1st Cir. 2003)); DIRECTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1344 (M.D. Fla. 2003); Smith, 141 F. Supp. 2d at 286; Getchel, 2004 WL 1202717, at *2; Huynh, 318 F. Supp. 2d at 1130; Albright, 2003 WL 22956416, at *3.

Factors to be considered in determining the appropriate amount of damages for a violation of Section 605(a) of the CCPA include:

> (1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damage award will be sufficient to deter similar conduct;  and (5) whether the damage award is comparable to awards in similar cases.  The burden is on DIRECTV to provide justification for why damages in excess of the minimum should be awarded.

Huynh, 318 F. Supp. 2d at 1131-32 (citations omitted); see also Getchel, 2004 WL 1202717, at *2 (collecting cases).

In considering these factors, the Court notes that a person who violates Sections 605(a) or 605(e)(4) of the CCPA may also face substantial criminal penalties. See 47 U.S.C. § 605(e)(1), (2), (4). Therefore, such a person may exercise his or her Fifth Amendment privilege and choose to stand silent rather than offering an explanation for his or her conduct. While the conduct itself remains unlawful and may be deemed admitted by virtue of the failure to answer the well-pleaded allegations in Plaintiff's *Complaint*, the Court will not go beyond the allegations of the *Complaint* and draw inferences adverse to a Defendant based solely on the fact that he or she has exercised his or her Fifth Amendment privilege. See Albright, 2003 WL 22956416, at *3 n.2. In particular, the Court will not infer from Defendant Barclay's silence that his violation of the above statutes was willful.

In this case, Plaintiff's *Complaint* contains the following allegations that specifically identify and relate to Defendant Barclay:

15.    Upon information and belief Defendant, Vince Barclay ("Defendant Barclay"), resides and/or conducts business in Albuquerque, New Mexico. On or about April of 2001, Defendant Barclay purchased several Pirate Access Devices from the Fulfillment Pirate Group. Defendant Barclay placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, Defendant Barclay made the following purchases:

(a)    On or about April 9, 2001, Defendant Barclay purchased four printed circuit board devices each invoiced as a "Terminator P.S.B.," more commonly known as a bootloader. Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment. The devices

-11-

were shipped to Defendant Barclay at Defendant's address in Albuquerque, New Mexico.

16.    On or about April 24, 2001, Defendant Barclay purchased five printed circuit board devices each invoiced as a "Terminator P.S.B.," more commonly known as a bootloader.  Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment.  The devices were shipped to Defendant Barclay at Defendant's address in Albuquerque, New Mexico.

[Compl. ¶¶ 15, 16.]  In addition, Plaintiff DIRECTV presented evidence at the hearing on

August 18, 2004, that the bootloaders purchased by Defendant Barclay were operational until

October 2002, that Defendant Barclay purchased two sets of DIRECTV receivers, satellite

dishes, and access cards in the year 2000, and that a DIRECTV satellite dish was observed

on Defendant Barclay's residence as recently as August 17, 2004.

The Court notes that the specific allegations pertaining to Defendant Barclay state that

he purchased multiple devices on two separate occasions.  Based on these well-pleaded

factual allegations, it is reasonable to infer that Defendant Barclay is among the "certain

defendants" whom the *Complaint* alleges "may have been engaged in an enterprise to

distribute and/or resell the devices purchased from the Fulfillment Pirate Group."  [Compl.

¶ 28.]  Such an inference in turn provides support for the legal conclusion in Count 4 of the

*Complaint* that this Defendant's conduct violated 47 U.S.C. § 605(e)(4).  [Compl. ¶ 46.]

Accordingly, the Court finds that an award of statutory damages for violation of  Section

604(e)(4) is appropriate with respect to Defendant Barclay in this case.

While Plaintiff has not presented any specific evidence to establish the extent of Defendant Barclay's participation in any marketing or commercial usage of the pirate access devices he purchased (*i.e.*, modifying, assembling, or distributing them for the purpose of assisting others in receiving Plaintiff's satellite transmissions without a subscription or payment), it is reasonable to infer from Defendant Barclay's multiple purchases on two separate occasions that he engaged in more than one instance of the conduct prohibited by Section 605(e)(4). Therefore, the Court concludes that Plaintiff may be entitled to the requested statutory damages of $10,000 for each violation as authorized under 605(e)(3)(C)(II) for a violation of Section 605(e)(4).

However, the Court will not award more than $10,000 in damages under Section 605(e)(4) in this case. While Plaintiff has presented various scenarios and calculations under which the damages in this case could exceed $10,000, Plaintiff's written motion for default judgment and the bench brief submitted at the hearing in this case only request a total of $10,000 in statutory damages. In the context of a default judgment, the Court will not award greater relief than that requested in Plaintiff's motion.

In light of the Court's decision to award the entire $10,000 in statutory damages based on Defendant Barclay's violation of Section 605(e)(4) alone, the Court also finds it unnecessary to award additional damages for this Defendant's violation of Section 605(a). To the extent the Court is required to address damages for violation of Section 605(a) in the alternative, the factors cited above would also support an award of statutory damages in the amount of $10,000 under that provision based on the level of prohibited activity that can

reasonably be inferred from Defendant Barclay's multiple purchases of pirate access devices and other DIRECTV equipment.  Combined with the award of attorney fees and costs, the Court determines that an award of $10,000 in damages is sufficient to deter future violations by this Defendant.

### 2.    The Electronic Communications Privacy Act (Wiretap Act)

Plaintiff's *Complaint* alleges that Defendant Barclay also violated two provisions of the Wiretap Act, namely 18 U.S.C. §§ 2511 and 2512.  The Court concludes, however, that Plaintiff lacks a private right of action to redress violations of Section 2512 and that Plaintiff is not entitled to any additional damages for Defendant Barclay's violation of Section 2511 in this case.

Section 2512 of the Wiretap Act imposes criminal penalties for the manufacture, distribution, possession, sale, or marketing of a wire, oral, or electronic communication intercepting device with knowledge or reason to know that the device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications.  See 18 U.S.C. § 2512; Gemmell, 317 F. Supp. 2d at 688-89.  While these activities are prohibited by the Wiretap Act, the statute does not expressly provide a private cause of action to redress the possession or distribution of a device prohibited by Section 2512, and the majority of courts that have addressed the issue hold that such a private right of action does not exist either expressly or by implication.  See generally Gemmell, 317 F. Supp. 2d at 691 & n.2 (collecting cases); see, e.g., DIRECTV, Inc. v. Treworgy, 373 F.3d 1124, 1129 (11th Cir. 2004); Huynh, 318 F. Supp. 2d at 1129; DIRECTV, Inc. v. Baker, 318

F. Supp. 2d 1113, 1116-21 (M.D. Ala. 2004); DIRECTV, Inc. v. Hoverson, 319 F. Supp. 2d 735, 736-38 (N.D. Tex. 2004).

The Court finds the authorities cited above to be persuasive.  Accordingly, the Court concludes that there is no private right of action of which Plaintiff may avail itself to obtain damages for a violation of Section 2512 of the Wiretap Act in this case.  It follows that Plaintiff's *Complaint* does not state a claim for violation of Section 2512  upon which relief may be granted, and therefore Section 2512 provides no basis to support an award of damages in this case.

The Court reaches a different conclusion with regard to the allegation that Defendant Barclay violated Section 2511 of the Wiretap Act.  Section 2511 provides, in relevant part, that "any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" shall be punished by fine or imprisonment or subject to suit by the Federal Government.  18 U.S.C. § 2511; see DirecTV, Inc. v. Brown, 371 F.3d 814, 816-17 (11th Cir. 2004).  In addition, Section 2520(a) of the Wiretap Act expressly creates a private cause of action for "any person whose wire, oral, or electronic communication is intercepted" in violation of Section 2511(1)(a) of that statute.  Huynh, 318 F. Supp. 2d at 1129 (quoting 18 U.S.C. § 2520(a)); accord Heggy v. Heggy, 944 F.2d 1537, 1539-40  (10th Cir. 1991).  Accordingly, Plaintiff's *Complaint* states a viable claim that Defendant Barclay violated Section 2511(1)(a).

It does not necessarily follow that Plaintiff is entitled to an additional award of damages based on a violation of Section 2511(1)(a), however, because Section 2520 of the Wiretap Act confers discretion upon the Court to decide whether an award of damages is warranted in the context of a private civil action. See Brown, 371 F.3d at 817-19 (agreeing with the Fourth, Sixth, and Eighth Circuits that the decision to award damages under 18 U.S.C. § 2520(c)(2) is discretionary and concluding that a district court did not abuse its discretion in declining to award any damages under that statute); Kaas, 294 F. Supp. 2d at 1048-49 (concluding that "the present case is not one for a 'sum certain' and that, in the exercise of the court's discretion, the plaintiff is entitled to no damages under 18 U.S.C. § 2520(c)(2)); Griffin, 290 F. Supp. 2d at 1346 n.25 (collecting cases and adopting the majority view).

Factors relevant to the Court's exercise of discretion in awarding damages under this statute include:

> (1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of DIRECTV's financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct.

Huynh, 318 F. Supp. 2d at 1132 (citations omitted); see also Griffin, 290 F. Supp. 2d at 1348-49 (similar).

In cases such as this one where there is no specific evidence that the Defendant profited commercially from the interception of Plaintiff's satellite transmissions, and where

Plaintiff is fully compensated by an award of damages plus attorney fees and costs under Section 605 of the CCPA, the award of additional damages under the Wiretap Act for the same conduct "could easily be viewed as gratuitous" and could "'bring financial ruin to persons of modest means, even in cases of trivial transgressions.'" Brown, 371 F.3d at 818-19 (quoting Reynolds v. Spears, 93 F.3d 428, 436 (8th Cir. 1996)). For these reasons, many courts have declined to award any damages for violations of Section 2511(1)(a) of the Wiretap Act under these circumstances where such an award would essentially duplicate the relief already awarded under Section 605 of the CCPA. See, e.g., Huynh, 318 F. Supp. 2d at 1132; Kaas, 294 F. Supp. 2d at 1049; Getchel, 2004 WL 1202717, at *1 n.1; DIRECTV, Inc. v. Perrier, No. 03-CV-4005, 2004 WL 941641, at *4 (W.D.N.Y. Mar. 15, 2004). The Court finds these authorities to be persuasive and declines to award additional damages for Defendant Barclay's violation of Section 2511 in this case.

### C.    Attorney Fees and Costs

Plaintiff's motion requests attorney fees in the sum of $711.32 and costs in the sum of $17.00. [Doc. No. 81.] Section 605(e)(3)(B)(iii) of the CCPA provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved part who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Similarly, Section 2520(b)(3) of the Wiretap Act provides for "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2520(b)(3).

The Court finds that Plaintiff is the prevailing party in this action against Defendant Barclay. Therefore, Plaintiff is entitled to an award of reasonable attorney fees and costs under the above statutes.

The determination of what amount is "reasonable," however, is committed to this Court's discretion. See Huynh, 318 F. Supp. 2d at 1130; cf. Hunt, 770 F.2d at 148 (noting that "attorney's fees may not be awarded without a hearing to determine the amount"). Thus, a court may deny a request for attorney fees that is unsupported by any evidence or documentation to show that the fees are reasonable. See, e.g., Getchel, 2004 WL 1202717, at *4; cf. Sussman v. Patterson, 108 F.3d 1206, 1212 (10th Cir. 1997) (noting that in order to satisfy its burden of proving the reasonableness of its attorney fees, a prevailing party generally must present detailed billing records that explain how the hours worked were allotted to specific tasks). In this case, Plaintiff has presented the affidavit of one of its attorneys, James R. Standring, to support its request for attorney fees and costs.

The Court notes that this case presented no particularly complicated legal issues with respect to Defendant Barclay, and the Court takes notice that Plaintiff's attorneys are handling a number of cases presenting identical issues in this district and throughout the country. See Huynh, 318 F. Supp. 2d at 1130 (reducing attorney fees where issues are straightforward and Plaintiff's attorneys enjoy some economy of scale due to the large number of similar cases). Indeed, the Court consolidated the hearing on Plaintiff's motion for default judgment against Defendant Barclay with other cases with similar motions

pending, thereby allowing Plaintiff's counsel to address such motions at a single hearing involving essentially the same issues.[2]

The large number of reported decisions by other courts in similar cases brought by Plaintiff also provides a basis for comparison that simplifies this Court's task of determining the reasonableness of the attorney fees and costs requested in Plaintiff's motion.   <u>See</u> <u>Huynh</u>, 318 F. Supp. 2d at 1130 (assessing the reasonableness of requested attorney fees by reference to the fees awarded in similar cases brought by the same plaintiff).  Upon inquiry at the hearing, Plaintiff's counsel provided more specific information about how the requested attorney fees and costs were calculated and divided among the numerous cases that Plaintiff is simultaneously prosecuting.  With this additional information, the Court is able to conclude that Plaintiff's request for attorney fees in the sum of $711.32 and costs in the sum of $17.00 is reasonable.  The Court will award these amounts.

**D.    <u>Injunctive Relief</u>**

Plaintiff's motion also requests that the Court permanently enjoin Defendant Barclay from committing or assisting in the commission of any violation of 47 U.S.C. § 605, 18 U.S.C. § 2511, and 18 U.S.C. § 2512.  As stated earlier, there is no private right of action to enforce 18 U.S.C. § 2512, but injunctive relief to enforce 47 U.S.C. § 605 and 18 U.S.C. § 2511 in the context of a private civil action is expressly authorized by the CCPA and the

_____

[2]Plaintiff's counsel stated that he is not requesting any additional attorney fees or costs related to his appearance or presentation of evidence at the hearing on August 18, 2004.

Wiretap Act.  See Charter Communications Entm't I, LLC v. Shaw, 163 F. Supp. 2d 121, 126 (D. Conn. 2001); Smith, 141 F. Supp. 2d at 287-88; Getchel, 2004 WL 1202717, at *4. The Court finds that Plaintiff is entitled to a permanent injunction enjoining and restraining Defendant Barclay from receiving, possessing, or using a pirate access device in violation of the above statutes.  See Getchel, 2004 WL 1202717, at *4; Kaas, 294 F. Supp. 2d at 1047.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff is entitled to a default judgment granting injunctive relief and awarding statutory damages in the amount of $10,000.00, attorney fees in the amount of $711.32, and costs in the amount of $17.00.

**IT IS, THEREFORE, ORDERED** that ***Plaintiff's Motion for Entry of Default and Default Judgment Against Vince Barclay*** [Doc. No. 81] is **GRANTED IN PART** and **DENIED IN PART** as specified above.

**IT IS FURTHER ORDERED** that a default judgment shall be entered against Defendant Vince Barclay in the sum of $10,000.00, with costs and disbursements in the amount of $17.00, and attorneys' fees in the sum of $711.32, amounting in all to the sum of $10,728.32, plus post-judgment interest as allowed by law to accrue thereon from the date of judgment forward until paid.

-20-

**IT IS FURTHER ORDERED** that Defendant Vince Barclay is permanently enjoined from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511.

**SO ORDERED**, this 31st day of August, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*